# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NANCY WHITAKER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:11-cv-00522 |
| | ) Judge Aleta A. Trauger |
| JAMES N. MATTIS, SECRETARY OF DEFENSE, | ) |
| Defendant. | ) |

## MEMORANDUM

Before the court is plaintiff Nancy Whitaker's Motion to Enforce Settlement Agreement, Impose Sanctions, and Award Attorneys' Fees ("Motion to Enforce"). (Doc. No. 220.) Because the court lacks subject matter jurisdiction to consider it, the motion will be denied.

## I. Factual and Procedural Background

Plaintiff Nancy Whitaker filed suit on June 2, 2011 against the Secretary of the Department of Defense, in his official capacity, alleging violations of her rights under Title VII of the Civil Rights Act of 1964 in connection with her employment by the Department of Defense. On April 10, 2018, the parties reached an agreement to settle all claims involved in the lawsuit as well as two claims the plaintiff was pursuing separately before the EEOC. (*See* April 10, 2018 Hr'g Tr., Doc. No. 218, at 5–6.)

The written Settlement Agreement, which the court reviewed at the time the parties submitted their Agreed Order of Dismissal, required the defendant to pay $30,000 directly to the plaintiff and an additional $40,000 in attorneys' fees, for a total settlement amount of $70,000. (Doc. No. 222, at 14–15.) The Settlement Agreement contemplated that the entire $70,000 payment would be made to the plaintiff's lead attorney's trust account and that the lead attorney

would then make disbursements to the plaintiff and the other attorneys. (*See* Doc. No. 216, at 6–7; Doc. No. 222, at 14–16.)

Following the parties' execution of the Settlement Agreement, the court entered the parties' Agreed Order of Dismissal as submitted, adding only a provision requiring each party to pay its own costs. This Order states, in substantive part: "The parties . . . have informed the court that all matters between these parties have been settled and compromised. Accordingly, this action is hereby DISMISSED with prejudice, each party to bear their own costs." (Doc. No. 217.)

Now pending is the plaintiff's Motion to Enforce (Doc. No. 220), filed on August 17, 2018. The motion was filed on behalf of the plaintiff by attorneys Daniel L. Graves, II, who entered an appearance in this case on August 8, 2018, and Amos N. Jones, who has never formally entered an appearance or sought admission to practice in this court *pro hac vice*. Neither Mr. Graves nor Mr. Jones represented the plaintiff in the underlying proceedings. Mr. Jones was the attorney representing the plaintiff in the EEOC proceedings.

In the Motion to Enforce, the plaintiff argues that the defendant breached the Settlement Agreement by issuing payment to the plaintiff but then retaining the entirety of that payment. Besides retaining the $30,000 payment that was to go directly to the plaintiff, the government retained the $40,000 that was to cover attorneys' fees. The plaintiff argues that the Settlement Agreement specifically contemplated that the portion of the settlement payment specifically designated for payment of attorneys' fees was supposed to be paid directly to the plaintiff's lead attorney's trust account and not to the plaintiff herself. The plaintiff, through counsel, insists that the government breached the Settlement Agreement by failing to ensure payment of the attorneys' fee directly to counsel for the plaintiff.

On August 31, 2018, the Secretary filed his Response in Opposition to the Motion to Enforce. (Doc. No. 226.) The Secretary asserts that he requested payment and that payment in the amount of $70,000 was issued to the plaintiff from the Judgment Fund in accordance with the terms of the Settlement Agreement. (Doc. No. 226, at 1.) However, pursuant to 31 U.S.C. § 3716(c)(1)(A), that payment was retained by the Department of Treasury and credited toward a previously incurred non-tax debt owed by the plaintiff to a different federal agency. (*Id.* at 1–2.)

Documentation submitted by the plaintiff in support of the Motion to Enforce shows that counsel for the defendant made a request for payment from the Judgment Fund in accordance with the Settlement Agreement by mailing to the Department of the Treasury, Bureau of Fiscal Service, on April 12, 2018, a copy of the Agreed Order of Dismissal, Settlement Agreement and Release, Judgment Fund Transmittal, Judgment Fund Award Data Sheet, and Judgment Fund Voucher for Payment in the amount of $70,000. (Doc. No. 222, at 12–22.)

Documentation submitted by the government further shows that the plaintiff was notified by letter dated February 28, 2017 that she owed the United States government $219,079.43, because, "on 02/27/2017 the Louisville Fiduciary Hub (LFH) determined that while appointed as the VA fiduciary for [REDACTED] [the plaintiff] misused $219,079.43 of his VA benefits." (Doc. No. 226-2.) The letter explained what steps the plaintiff should take to pay the full amount owed, to try to settle the debt for a lesser amount, or to set up a payment plan to pay off the debt over time. (*Id.*)

In addition, according to the government, the plaintiff was notified by letter dated May 18, 2018 that, although payment of the settlement amount had been approved and released, the Department of Treasury had retained the payment and applied it to the plaintiff's pre-existing non-tax debt to the United States. The letter explained exactly what happened to the payment and

why. It also described what steps the plaintiff needed to take if she contested the debt or believed the payment had been applied in error. (*Id.*)

The plaintiff did not file a reply brief and has not contested, or objected to, any of the documentation submitted by the government regarding the pre-existing debt to which the $70,000 settlement amount was applied.

## II. Analysis

### A. The Court's Power to Enforce Settlement Agreements

Although the district courts have the inherent power to enforce agreements entered into in settlement of litigation pending before them, *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000), a district court may exercise this power and summarily enforce a settlement agreement only if it has subject matter jurisdiction over the separate breach-of-contract controversy surrounding the settlement agreement, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994), *Limbright v. Hofmeister*, 566 F.3d 672, 674–75 (6th Cir. 2009).

### B. Lack of Subject Matter Jurisdiction

Although the parties do not address this issue, the first matter to be resolved is whether the court has subject matter jurisdiction over this controversy. The federal district courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the United States Constitution and affirmatively granted by federal statute. *Kokkonen*, 511 U.S. at 377. The court has a duty to consider its subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); Fed. R. Civ. P. 12(h)(3).

The Supreme Court's decision in *Kokkonen* "provides the analytical framework for deciding whether a federal court has properly retained jurisdiction over a settlement agreement and, consequently, over any enforcement issues associated with that agreement." *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 716 (6th Cir. 2010). In *Kokkonen*, the Court unanimously recognized that "[e]nforcement of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." 511 U.S. at 378. Thus, the existence of a simple order of dismissal premised upon a settlement agreement, standing alone, is insufficient to invoke federal supplemental jurisdiction over a contract dispute over the enforceability of the settlement agreement. *See id.* ("The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute."). Some other independent basis for jurisdiction must exist, regardless of whether the enforcement action is before the court as a new, separately filed lawsuit or a motion to enforce the settlement agreement entered in a previously dismissed case. *See id.* (addressing the district court's jurisdiction over a motion to enforce settlement agreement filed in the previously dismissed case); *see also Limbright*, 566 F.3d at 673 (addressing new suit alleging breach of settlement agreement reached in a previously dismissed lawsuit).

Where, as here, the gravamen of the dispute is breach of contract, state contract law generally governs the claim, and federal question jurisdiction does not exist under 28 U.S.C. § 1331. *See Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (finding that the court did not have federal question jurisdiction over breach of contract action against the Secretary of the Department of Housing and Urban Development Diversity). Jurisdiction under § 1332 is another

possible avenue, *Limbright*, 566 F.3d at 676, but the amount in controversy here is $70,000, less than the jurisdictional requirement. Diversity jurisdiction is therefore lacking.

The Supreme Court has also recognized that the district court may retain jurisdiction to enforce a settlement agreement "if the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 381; *see also Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010) (holding that the district court properly exercised jurisdiction over motion to enforce settlement, because the order of dismissal expressly included a provision retaining jurisdiction over the settlement agreement). In this case, however, the Agreed Order of Dismissal submitted by the parties did not incorporate a requirement that the parties comply with the terms of the Settlement Agreement, nor did it include language expressly providing for the court's retention of jurisdiction for the purpose of enforcing the settlement.

Another statutory provision, 28 U.S.C. § 1361, grants the federal district courts original jurisdiction over any action "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Supreme Court has recognized that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The writ of mandamus is an "extraordinary remedy," *Leisure v. FBI of Columbus, Ohio*, 2 F. App'x 488, 490 (6th Cir. 2001), and the party seeking the writ has the "the burden of showing that [her] right to issuance of the writ is clear and indisputable."

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004) (internal quotation marks and citations omitted).

Section 1361 does not apply here, for several reasons. First, the plaintiff has not invoked § 1361 and makes no effort to establish a clear and undisputable right to the issuance of a writ. And second, an action under § 1361 must be brought against a federal official in his individual capacity and not against the office. *Blaney v. U.S.*, 34 F.3d 509, 513–14 (7th Cir. 1994) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88 (1949)). If, as is the case here, "a plaintiff seeks to compel an officer to perform a contractual duty not dictated by the terms of his authority under either the Constitution or a federal statute or regulation, it is not a suit against the officer in his personal capacity to perform his duties under the law, but rather a suit against his office." *Id.* at 514. An attempt to enforce a settlement agreement via the mandamus statute would, therefore, "amount[] to a suit for specific performance against the United States," to which § 1361 mandamus jurisdiction does not extend. *Id.* (citation omitted); *see also Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 860 (Fed. Cir. 1992) (holding that "§ 1361 cannot provide jurisdiction where the duty alleged is merely a contractual duty unsupported by the Constitution, a statute, or a regulation").

Moreover, although Congress has waived sovereign immunity in Title VII cases in which the federal government is the employer, 42 U.S.C. § 2000e–16(d), this statutory waiver does not expressly extend to monetary claims against the federal government for breach of a settlement agreement that resolves a Title VII dispute. *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007). Although the defendant in this case may have waived the defense of sovereign immunity by failing to raise it in response to the plaintiff's Motion to Enforce, an additional basis for concluding that § 1361 would not apply in this situation is that a claim against Secretary Mattis

in his official capacity as Secretary of Defense is a suit against the sovereign, and § 1361 does not expressly waive sovereign immunity. *See, e.g.*, *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) ("The provisions of 28 U.S.C. § 1361 creating the federal mandamus action do not constitute a waiver of sovereign immunity by the United States." (collecting cases)).

Finally, while the Sixth Circuit does not appear to have addressed the matter specifically, a majority of circuits considering the question have held that violation of a settlement agreement sounds in contract and, when the claim is against a federal agency and the amount in controversy exceeds $10,000, the Court of Federal Claims possesses exclusive jurisdiction over such a claim. *See, e.g.*, *Westover v. United States*, 71 Fed. Cl. 635 (Fed.Cl.2006) ("Title VII itself does not provide a remedy for a breach of contract that occurs incident to settlement of a Title VII claim" and holding that the Court of Federal Claims possessed jurisdiction); *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2007) ("[A] claim for breach of a Title VII settlement agreement is a contract claim within the meaning of the Tucker Act and, therefore, for claims exceeding $10,000 jurisdiction belongs with the Court of Federal Claims." (citations and internal quotation marks omitted)); *see also Lindstrom v. United States*, 510 F.3d 1191 (10th Cir. 2007) (holding that the district court lacked subject matter jurisdiction over employee's actions to enforce settlement agreement with federal employer); *Kielczynski v. Does 1–2*, 56 Fed. Appx. 540 (2d Cir. 2003) (jurisdiction over the plaintiff's claim against a federal official in his official capacity, asserting that a federal agency had breached an employment contract, resided exclusively in the Court of Federal Claims since the amount in controversy exceeded $10,000); *Griswold v. Potter*, No. 1:03-CV-429, 2003 WL 23941714, at *6 (W.D. Mich. Oct. 15, 2003) (holding that the district court lacked jurisdiction over the plaintiffs' action to enforce settlement agreements entered in Title VII cases against the Postmaster General in his official capacity and that the

Court of Federal Claims, instead, had exclusive jurisdiction). In other words, even if § 1361 did accord jurisdiction, the plaintiff cannot establish that no other avenue of relief is available to her.

### III. Conclusion

In short, the court lacks subject matter jurisdiction to enforce the Settlement Agreement that resulted in the dismissal of this case. For that reason, the court will deny plaintiff's Motion to Enforce. An appropriate Order is filed herewith.

ENTER this 26th day of November 2018.

ALETA A. TRAUGER
United States District Judge